Appellant, Hoyt Gary Cline, was indicted in March 1988, by an Etowah County *Page 369 
Grand Jury for attempted murder, a violation of §§ 13A-4-2 and13A-6-2, Code of Alabama 1975. A trial ensued on April 19, 1989, in which a jury found appellant guilty as charged in the indictment. The evidence established that, during an altercation with the victim, Frank Payne, appellant slashed the victim's throat with a knife, inflicting a five-inch cut from the victim's larynx to the back of his jawbone, which required 52 stitches to close. The wound was "within just millimeters" of the jugular vein and the carotid artery. The evidence of the incident was undisputed and further corroborated by an eyewitness who testified that he saw appellant and the victim struggling and then heard the victim say, "You bastard, you have cut me," and, thereafter, saw appellant fold a knife, put it in his pocket, and go to his car.
On May 18, 1989, the trial court entered judgment and sentenced appellant, who has one prior felony conviction, under the Habitual Felony Offender Act, to 15 years' imprisonment, § 13A-5-9(a)(3). Appellant was ordered to serve three years in the penitentiary, with the remainder suspended and appellant placed on probation for five years. He was also ordered to pay $1125.75 in restitution. On June 2, 1989, the state filed a motion to reconsider appellant's sentence under the mandatory sentencing provision of § 13A-5-6(a)(4), which requires that, for a Class A felony involving the use or attempted use of a firearm or deadly weapon, the minimum punishment is not less than 20 years. The trial court granted the state's motion and resentenced appellant on June 30, 1989, to a 20-year sentence. (Restitution remained the same.) The court order dated June 30 specifically notes that this sentence was pursuant to the mandate of § 13A-5-6(a)(4), but that appellant was being sentenced as a habitual offender. However, appellant was not present for this sentencing; it was apparently by order only. Therefore, another hearing was held on July 13 at which appellant was present and was sentenced in accordance with the court's order of June 30. At this hearing, appellant gave oral notice of appeal.
 I
Appellant contends that the trial court erred in resentencing him on June 30, 1989, to 20 years' imprisonment after having sentenced him to a term of 15 years' imprisonment on May 18, 1989, because, he argues, the trial court had no further jurisdiction or power to increase his original sentence. He also contends that his resentencing violated his right not to be twice put in jeopardy.
Clearly, § 13A-5-6(a)(4) is the appropriate punishment provision for appellant's conviction, as we further discuss in part II. Where the requisite circumstances for application of this section are present, see Ex parte McCree, 554 So.2d 336
(Ala. 1988), as in this case, the section is mandatory, id.;Clency v. State, 475 So.2d 642, 644 (Ala.Cr.App. 1985). Since this section was not followed, appellant's first sentence was void.
 "Since the first sentence imposed on [appellant] was invalid, the trial court had not only the power, but the duty, to sentence [appellant] as required by law. See Bozza v. United States, 330 U.S. 160 [67 S.Ct. 645, 91 L.Ed. 818] . . . (1947). 'In this case the court "only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender." ' Id. at 167 [67 S.Ct. at 649] . . . (quoting In re Bonner, 151 U.S. 242, 260
[14 S.Ct. 323, 327, 38 L.Ed. 149] . . . (1894))."
Hughes v. State, 518 So.2d 890, 891 (Ala.Cr.App. 1987) (emphasis in original).
 "If the sentence first imposed is void, a subsequent correction will not raise a question of double jeopardy. In Bozza v. United States, the Court held that the Double Jeopardy Clause did not prevent the sentencing judge from increasing punishment where the previous sentence failed to comply with the mandatory sentencing provisions of a statute."
3 J. Cook, Constitutional Rights of the Accused § 23:40 (1986) (footnotes omitted). An increase in sentence where the original sentence is void is the "most common exception to the general rule prohibiting enhancement *Page 370 
of an imposed sentence." A. Campbell, Law of Sentencing § 59 (1978). For the general rule, see Ex parte Tice, 475 So.2d 590,591-92 (Ala. 1984) (wherein the court held that "[o]nce a valid
sentence has been entered, it cannot, in the absence of fraud or another compelling reason, be altered anytime thereafter so as to increase the severity of the sentence") (emphasis added). In Baker v. State, 473 So.2d 1127, 1128
(Ala.Cr.App. 1984), writ quashed, 473 So.2d 1130 (Ala. 1985), the court used this analysis to address the issue of whether the trial court erred in resentencing the appellant on July 27, 1983, to a harsher sentence, pursuant to the firearms enhancement provision, than that imposed on June 9, 1983. The court held that because "no sentence permitted by law had been imposed on him," the later sentence was the first lawful sentence and, hence, no right to due process or protection against double jeopardy was violated. Id. For a like disposition of a very similar case, see State v. Pringle,83 Wn.2d 188, 517 P.2d 192 (1973).
We further note that, in correcting an illegal sentence, the double jeopardy protection is not violated even if the defendant has begun serving the original sentence. UnitedStates v. Ortega, 859 F.2d 327, 335 n. 13 (5th Cir. 1988), cert.denied, 489 U.S. 1027, 109 S.Ct. 1157, 103 L.Ed.2d 216 (1989);United States v. Alverson, 666 F.2d 341, 347-48 (9th Cir. 1982);Stuckey v. Stynchcombe, 614 F.2d 75, 76 (5th Cir. 1980); UnitedStates v. Stevens, 548 F.2d 1360, 1362-63 (9th Cir.), cert.denied, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977). Even after the defendant has begun to serve his sentence, the power of the trial court to alter an invalid sentence and its duty to do so continue. Breest v. Helgemoe, 579 F.2d 95, 99
(1st Cir.), cert. denied, 439 U.S. 933, 99 S.Ct. 327,58 L.Ed.2d 329 (1978).
Finally, we note that appellant failed to timely present, to the trial court, any objection on the specific ground of setting aside the original sentence and increasing the sentence. In Ex parte Yeung, 489 So.2d 1106 (Ala. 1986), the appellant contended that the trial court erred in setting aside the original sentence, on motion by the state, and resentencing him to a more severe sentence pursuant to the firearm enhancement provision of § 13A-5-6(a)(4). To this contention, the court stated the following:
 "[B]ecause the record reveals that Yeung's attorney failed to object to the resentencing, we cannot address this issue. It is well settled that this Court will not address the merits of an argument which is presented for the first time on appeal. Chatman v. City of Prichard, 431 So.2d 532
(Ala. 1983); Green v. Taylor, 437 So.2d 1259
(Ala. 1983)."
Id. at 1110. As did the appellant in Yeung, this appellant timely objected on the ground that the sentence was improperly enhanced, not on the ground here argued, and, as did the Yeung
court, we find the present argument to be procedurally barred.
 II
Appellant next contends that he was improperly sentenced by the trial court under § 13A-5-6(a)(5) when the trial court determined, as reflected by its sentencing order, that appellant "used a knife which the Court determines was a deadly weapon in the commission of the offense." More specifically, appellant asserts that the record does not present sufficient facts to support the court's ruling that the knife involved in the incident was a deadly weapon and that the jury did not make a specific finding on that point. Appellant contends that, from the record, one can conclude only that the knife involved was an ordinary pocketknife. For purposes of our discussion, we adopt that assertion.
A "deadly weapon" is defined by § 13A-1-2(11) as "[a] firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury. . . ." Although a pocketknife is not specifically included within the definition of "deadly weapon," as are other types of knives, the definition does not preclude a finding that a pocketknife, in this instance, was a deadly weapon. The *Page 371 
statutory definition is not limited to knives of only those types specified. Thatch v. State, 432 So.2d 8, 9
(Ala.Cr.App. 1983). While a pocketknife may not be deadly per se and ordinarily has lawful functions and uses, it may or may not be deemed a deadly weapon, depending on the manner of its use.See Jones v. State, 523 So.2d 518 (Ala.Cr.App. 1987) (wherein, for sentencing purposes, a tire tool was deemed a deadly weapon by the manner of its use); Hill v. State, 516 So.2d 876, 881-82
(Ala.Cr.App. 1987) (wherein, for sentencing, a baseball bat was considered a deadly weapon); Baker v. State, 441 So.2d 1061,1062 (Ala.Cr.App. 1983) (wherein, for sentencing enhancement, hands or fists were considered to be deadly weapons "depending upon the manner and subject of their use").
Although, obviously, the following cases were not decided under the present statutory definition, we find them helpful in stressing the deadly manner in which a pocketknife can be used: In Webb v. State, 100 Ala. 47, 14 So. 865 (1893), the court, in affirming a murder conviction for killing the victim by cutting his throat with a pocketknife, held that the pocketknife, as used, was a deadly weapon sufficient to support an inference of malice and upheld the trial court's refusal to instruct that a pocketknife is not, in contemplation of law, a deadly weapon. In so holding, the court stated the following: "A pocketknife may or may not be a deadly weapon. . . . That the knife in the case at bar was sufficient, in the hands of the defendant, to produce almost immediate death is clearly proved." Id. at 52-53, 14 So. at 867. See also Tesney v. State, 77 Ala. 33, 39
(1884) (wherein the court held that "[a]n ordinary pocketknife may be a deadly weapon" depending upon "the description of the weapon, the manner of its use, the nature and locality of the wound, and the other circumstances proved").
The record clearly indicates that appellant used a knife with the intent of striking the victim on the neck and in a manner having no relation to any of its innocent and useful uses. Hence, the trial court did not improperly determine that appellant's knife constituted a deadly weapon. We note that it is unnecessary that this determination be made by the jury.Ex parte Guess, 507 So.2d 551, 552-53 (Ala. 1987).
 III
Appellant's final contention is that he was not afforded an opportunity for allocution at resentencing and that this error requires a new sentencing hearing.[1] In conjunction with this contention, appellant argues that the June 30 resentencing violated A.R.Cr.P.Temp. 7, which requires that the defendant be present at his sentencing unless his presence is waived. This latter contention is without merit, for the error in resentencing by written order was rendered harmless by the resentencing hearing held on July 13 in appellant's presence.
A review of the record shows that, at appellant's original sentencing, appellant was asked if he had anything to say before sentence was pronounced. However, the transcript of the resentencing hearing, wherein appellant's sentence was increased, reveals that appellant was afforded no opportunity to make a statement on his own behalf. Compare Jones v. State,555 So.2d 333 (Ala.Cr.App. 1989) (wherein the court held that the allocution requirement was satisfied where the defendant made a statement when defense counsel informed the court, pursuant to the court's question whether anyone had anything further, that the defendant wanted to say something). Moreover, the judgment entry contains no notation that appellant was afforded an opportunity to make a statement.
"It was required at common law, and we have adopted the rule here, that before sentence, on a conviction of felony, the prisoner must be interrogated by the court as to whether he has anything to say why the sentence of the law should not be pronounced upon him." Brooks v. State, *Page 372 234 Ala. 140, 141, 173 So. 869, 870 (1937). This common law "right" of allocution has been recently guaranteed by A.R.Cr.Temp. 8(b)(1), which states, "In pronouncing sentence the court shall . . . [a]fford the defendant an opportunity to make a statement in his own behalf before imposing sentence."[2]
The Alabama courts have considered a sentence without an allocution to be "erroneous," Ex parte Anderson, 434 So.2d 737,739 (Ala. 1983), and mandatorily subject to remand for "proper sentence under law," id. See also Ebens v. State,518 So.2d 1264, 1269 (Ala.Cr.App. 1986); Oliver v. State, 25 Ala. App. 34,34, 140 So. 180, 181 (1932) (wherein the court noted that "to constitute a valid judgment [, the fact that the defendant was asked if he has anything to say why the sentence of law should not be pronounced upon him] must appear in the minute entry of the judgment").
Accordingly, because the record shows no allocution or waiver thereof, we are compelled to reverse the judgment of sentence and remand this cause to the circuit court for resentencing of appellant, in conformity to the requirements of the law.See Ex parte Anderson; Brooks v. State; and Junior v. State,411 So.2d 850, 858 (Ala.Cr.App. 1982).
CONVICTION AFFIRMED; SENTENCE REVERSED AND CAUSE REMANDED.
All Judges concur.
[1] We note that, although this issue was raised by appellant, the attorney general disregarded it.
[2] This right appears to be somewhat broader by allowing the defendant to make "a statement," for the common law right to allocution gave "the defendant a formal opportunity to present one of the strictly defined legal reasons which required the avoidance or delay of sentencing." Note, Procedural Due Processat Judicial Sentencing for Felony, 81 Harv.L.Rev. 821, 832-33 (1968).