The appellant, Lee Wallace Watkins, Jr., was convicted of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975. He was sentenced to 25 years' imprisonment pursuant to the Habitual Felony Offender Act.
The state's evidence tended to show that on the night of June 10, 1990, Patricia Long was working at Bud's Convenience Store on Highway 20 in Decatur when the appellant came into the store, held a box cutter[1] inches from her throat, and demanded that she open the cash register. After Long opened the register, the appellant removed the $42.36 that was in the register and fled the premises. At the time of the robbery, the appellant was wearing a light-colored T-shirt, shorts, tennis shoes, and a baseball cap.
Moments after the robbery, Officer William Wilbourn of the Decatur Police Department, who was on patrol that night, heard over the police radio that a black man had robbed Bud's and was last seen running west on Highway 20. Wilbourn then saw a black male wearing a light-colored shirt and shorts running south on 12th Avenue, just 200 yards south of Highway 20. When Wilbourn turned his car around to pursue the subject, he lost sight *Page 189 
of him. Moments later, however, Wilbourn saw the same man running down a nearby street and, eventually, into the Sunset Housing Project. Wilbourn then called other officers to the housing project, described the man he had seen, and together they "contained" the area and began to search on foot.
While on routine traffic patrol, Officer Ken Hamilton saw the appellant, who met Wilbourn's description, in the Sunset Housing Project. Hamilton turned on his "alley light" (a light mounted on the side of the car) and told the appellant to stop so that he could talk to him. When the appellant ran off, Hamilton pursued him in his vehicle. Upon seeing the appellant throw something under a bush, the officer stopped and recovered $29 in cash from under the bush.
Shortly thereafter, Wilbourn and another officer encountered the appellant outside of apartment no. 635 in the Sunset Housing Project. The appellant, dressed in nothing but a pair of shorts, was covered with sweat, dust, and dirt. When the appellant turned and walked away from them, the officers noticed that he staggered, appearing intoxicated. They then stopped him and, upon smelling alcohol on his breath, arrested him for public intoxication.
A cursory search for weapons conducted pursuant to the appellant's arrest revealed a box cutter and $3.16 in change in his pocket. Further, Officer Hamilton, while searching the scene of the arrest a short time later, discovered a T-shirt and a pair of tennis shoes matching the description of those worn by the appellant. The clothes were hidden under a fallen bicycle in front of apartment no. 635.
The appellant presents four issues on appeal.
 I
The appellant first contends that the state did not prove one of the elements of the offense, namely that he was in possession of a "deadly weapon" or "dangerous instrument" during the course of the robbery. We disagree.
To be convicted of robbery in the first degree, one must be "armed with a deadly weapon or dangerous instrument." Section13A-8-41(a)(1), Code of Alabama 1975.
A "deadly weapon" is "anything manifestly designed, made oradapted for the purposes of inflicting death or serious physical injury" and "includes, but is not limited to . . . a switch-blade knife, gravity knife, stiletto, sword or dagger. . . ." Section 13A-1-2(11), Code of Alabama 1975 (emphasis added). Even though a type of knife "may not be deadly per se and ordinarily has lawful functions and uses, it may or may not be deemed a deadly weapon depending on the manner of its use."Cline v. State, 571 So.2d 368, 371 (Ala.Cr.App. 1990).
Further, the definition of "dangerous instrument" includes:
 "[a]ny instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury. . . ."
Section 13A-1-2(12), Code of Alabama 1975.
A box cutter qualifies as both a "dangerous instrument" and a "knife" within the definition of "deadly weapon." Thus, this element was proved, and the circuit court did not err in allowing the case to go to the jury.
 II
The appellant also contends that the circuit court erred in denying his motion to suppress evidence of the box cutter procured during a search incident to his allegedly illegal warrantless arrest for public intoxication.
An officer is allowed to make a warrantless arrest for "any public offense committed or breach of peace threatened in his presence." Section 15-10-3(a)(1), Code of Alabama 1975. In this case, the appellant was originally arrested for public intoxication, a violation of § 13A-11-10, Code of Alabama 1975, which provides in pertinent part: *Page 190 
 "A person commits the crime of public intoxication if he appears in a public place under the influence of alcohol . . . to the degree that he endangers himself or another person or property. . . ."
When an officer has probable cause to believe that the apparently intoxicated appellant recently committed a crime in the area, then he has sufficient evidence that the appellant "endangers himself or another," and, thus, may arrest him for public intoxication. For example, in $4,320 U.S. Currency InPossession of Bulger v. State, 567 So.2d 352 (Ala.Civ.App. 1990), an officer questioned the appellant in response to a report of a discharged firearm. After the appellant denied any such activity, the officer observed him staggering as he walked away. When informed by a witness that she thought that the appellant had fired the gun, the officer arrested him for public intoxication. The witness's report gave the officer probable cause to believe that the appellant, who appeared to be drunk, was endangering both himself and others and, thus, was in violation of the public intoxication statute. Bulger, supra.
In this case, the arresting officers had probable cause to believe that the appellant had robbed the convenience store. Thus, the circuit court did not err by receiving into evidence the box cutter found on the appellant during a search incident to his lawful arrest.
 III
The appellant further contends that the circuit court committed reversible error when it denied his motion to suppress the in-court identification by several witnesses, arguing that they had been exposed to an "impermissibly suggestive" out-of-court photographic array.
A few hours after the robbery, Reverend Leslie James Garner and Damita Tatum, who had been in the convenience store's parking lot before and after the crime, and Patricia Long, the clerk on duty at the convenience store at the time of the robbery, each viewed a group of six photographs. All of them identified the appellant from the group of photographs.
The state, however, never offered the photographs into evidence. As a result, the array itself was not made part of the record. A reviewing court cannot predicate error on matters not shown by the record. Smelcher v. State, 520 So.2d 229
(Ala.Cr.App. 1987); Abbott v. State, 494 So.2d 789 (Ala.Cr.App. 1986). No error occurred here.
Upon identifying the appellant at trial, Reverend Garner stated that he specifically recalled the appellant coming across the parking lot because he seemed drunk, while Tatum testified that she clearly remembered the appellant because he looked "scary." Long testified that, during most of the robbery, she looked only at the appellant's face, noticing that his eyes were "real mean looking."
Based on the aforementioned testimony, the circuit court did not err in denying the appellant's motion to suppress the in-court identifications. See, e.g., Dill v. State,429 So.2d 633 (Ala.Cr.App. 1982).
 IV
Finally, the appellant contends that the circuit court erred in denying his motion for a new trial, arguing that he had obtained newly discovered evidence that would exonerate him.
On April 30, 1991, the appellant filed a written motion for a new trial, which motion was denied by operation of law after 60 days. Rule 13(d), Ala.R.Crim.P.Temp.
The appellant states that after the trial he recalled the name of an alibi witness and sought a new trial. He now argues that her testimony was newly discovered alibi evidence.
This is not newly discovered evidence, but, rather, newlydisclosed evidence; a new trial is not warranted. Lewis v.State, 367 So.2d 542 (Ala.Cr.App. 1978), writ denied,367 So.2d 547 (Ala. 1979); 66 C.J.S. New Trial § 101 (1950). The circuit court did not err in denying the motion. *Page 191 
This the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The box cutter was approximately six inches long with an attached single-edge razor blade of approximately one inch.